**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | § | |
| OF MS ORION J | § | |
| SCHIFFAHRTSGESELLSCHAFT | § | |
| UG (HAFTUNGSBESCHRANKT) & CO. KG | § | |
| JMS FOURTY-FIFTH SHIPPING CO. | § | |
| LTD, AND JUNGERHANS HEAVY LIFT- | § | |
| FLEET SERVICES GMBH & CO. KG, AS | § | |
| OWNER *PRO HAC VICE* AND MANAGING | § | CIVIL ACTION NO. H-14-1411 |
| OWNER, RESPECTIVELY, OF THE M/V | § | |
| INDUSTRIAL DAWN, FOR | § | |
| EXONERATION FROM OR LIMITATION | § | |
| OF LIABILITY | § | |

**MEMORANDUM AND ORDER**

**I.     Background**

This wrongful-death suit involves two sets of plaintiffs and three sets of defendants. The plaintiffs, six of the decedent's immediate family members, settled their claims with two of the defendants, Jüngerhans Heavy-Lift-Fleet Services GmbH & Co. KG and TTS NMF GmbH. The six plaintiffs could not agree among themselves how to allocate the settlement amount. One group—the decedent's widow and two sons, one under 18 when the accident occurred and one in his twenties living at home[1]—lived with the decedent at the time of the accident and contended that they are entitled to a larger share as a result. The other three plaintiffs—the decedent's adult daughters by a prior marriage, who had only limited contact with him in the years before his death—argued that they should receive the same amount as the decedent's adult son, who still lived in the decedent's home. Each group is represented by different counsel, and a guardian ad litem was

---

[1] The minor plaintiff turned 18 on September 4, 2015.

appointed to represent the interests of the then-minor younger son.

The two groups of three plaintiffs and the settling defendants agreed on the total settlement amount and the release terms. The two groups could not, however, agree on how to allocate the settlement fund among themselves. To resolve their differences without endangering the settlement, the plaintiffs and their counsel signed an Arbitration Settlement Agreement stating that it was "in the best interest of the Parties to proceed with final arbitration as to the allocation of the Funds." (Docket Entry No. 136 at p. 1). The parties "agree[d] to have the Arbitrator perform a non-appealable and final arbitration due to impasse occurring between the Parties in mediation," and agreed on an arbitrator. *Id.* at 2.

The Agreement provided that "[t]he Arbitrator has the sole discretion and authority to determine the final allocation of the Funds to the Parties." *Id.* The Agreement also stated that "[t]he Arbitrator's opinion is final, subject only to the approval of the federal court mentioned above and the probate court of Harris County in which the estate of [the decedent] is pending," "[t]he opinion issued by the Arbitrator is not appealable," and "any Texas court of competent jurisdiction may confirm the arbitration award." *Id.* Each of the adult plaintiffs signed the Agreement, including the decedent's wife, Eusebia Garcia.

The arbitrator issued an award, allocating approximately 35.8% of the settlement fund to the decedent's wife, 15% to his youngest son, who was still a minor at the time but about to celebrate his 18th birthday, 11.89% to each of his adult children, and 1.58% to the decedent's estate. *See* (Docket Entry No. 136, Ex. 2 at p. 1–2). The arbitrator's written award explained the allocation, as follows:

> I do not believe that this allocation of insurance proceeds should involve an attempt
> to quantify which child's loss is greater from among [the decedent's] offspring.

> Some may have spent more time with him within the past few months while others have forever lost that opportunity to reconcile or become closer to him.  Some may be more inherently emotionally detached from such life events and are capable of coping with the loss of their parent more stoically than others.
>
> In the end, they have each child lost the only father that they will ever have.  That is tragic and not fully compensable.  These available insurance proceeds will not salve that wound; instead, attempts to acknowledge the shared loss among themselves, the children of [the decedent], just might begin that process.

(Docket Entry No. 136, Ex. 2 at p. 3–4).

The decedent's wife and sons objected and asked this court to review the arbitrator's award,[2] arguing that the minor son and the estate were entitled to a larger share of the fund and the adult daughters to a smaller share than the arbitrator awarded.  The widow and her sons asserted that the arbitrator ignored the facts that the minor son was much closer to the decedent and more dependent on him for both economic and emotional support than the adult daughters by the prior marriage.  Counsel for the three adult-daughter plaintiffs opposed review, arguing that the parties' Arbitration Settlement Agreement makes clear that the award is final and reviewable only to ensure that it is in the minor plaintiff's best interest (assuming that he was still a minor at the relevant time).  This court held a hearing on August 31, 2015, to consider whether the settlement and allocation was in the minor plaintiff's best interest.

At the hearing, the mother, the guardian ad litem, and the still-but-barely-a minor plaintiff, testified, and counsel presented argument on whether this court could and should approve the arbitration award and settlement terms.  The guardian ad litem testified that the arbitrator's award to the minor plaintiff—roughly 15% of the total settlement fund—was in his best interest.  The ad litem had recommended that the arbitrator accept the 15% percent and recommended that the court

---

[2] The minor son appeared at the hearing represented by his guardian ad litem.

approve it. Mrs. Garcia, who speaks only Spanish, testified through an interpreter that her attorney had an interpreter explain the arbitration agreement in Spanish and that she understood the agreement before she signed it. She testified that she did not object to the amounts that she and her adult son received in the award. Her objection was to the relative amounts awarded to the adult daughters and her minor son. Ms. Garcia believed that the amount her son received should have been increased, and the amounts the three daughters by a prior marriage received decreased, either by increasing the amount directly awarded to him or increasing the amount awarded to the estate. She and her counsel acknowledged that most of the amount awarded to the estate would be distributed to the six plaintiffs based on the percentage of the total settlement each received. Her objection therefore was to the relative percentage awarded to her youngest son as opposed to the three adult daughters. The son testified that he was doing well in school after struggling for a period after his father died, and that he hoped to attend a selective college based on his excellent high school academic performance. He understood that he would receive no additional amounts from the settling defendants if the court approved the settlement.

Based on the testimony, the exhibits, counsels' arguments, and the applicable law, the court concludes that the settlement and allocation were in the minor plaintiff's best interest, within the Arbitration Settlement Agreement's terms, and within the arbitrator's authority under that Agreement. The court approves the settlement under the legal standard that governs and denies the plaintiffs' motion objecting to the settlement and asking the court to review and reject it. The reasons are explained below.

**II.     Discussion**

The Arbitration Settlement Agreement does not specify whether it is subject to the Federal

Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). The parties agreed that the TAA governs.³ The court reviews the Agreement under both and determines that the result would be the same under either statute.

### A. Review of the Arbitration Award Under the TAA

In *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), the Texas Supreme Court "determined that the parties' agreement could restrict the arbitrator's authority to make mistakes of law and could provide that the decision be reviewable like a trial court decision." *Humitech Dev. Corp. v. Perlman*, 424 S.W.3d 782, 792 (Tex. App.–Dallas 2014) (reh'g overruled) (citing *Nafta Traders*, 339 S.W.3d at 101). The arbitration agreement in *Nafta Traders* stated that "[t]he arbitrator does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." *Nafta Traders*, 339 S.W.3d at 88. "The supreme court concluded this agreement meant that the arbitrator lacked the power to make a reversible error of law and gave the courts the authority to review the arbitrator's decision for errors of law under the courts' authority to determine whether the arbitrator exceeded its powers." *Humitech*, 424 S.W.3d at 792 (citing *Nafta Traders*, 339 S.W.3d at 101). Unlike the agreement in *Nafta Traders*, the Agreement in this case stated that "[t]he Arbitrator's opinion is final, subject only to the approval of the federal court mentioned above and the probate court of Harris County in which the estate of [the decedent] is pending." (Docket Entry No. 136 at p. 2). It did not provide that the arbitrator lacked the power to make a reversible error of law or give this court the authority to review the arbitrator's decision for errors of law.

---

³ *But see BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 791 (5th Cir. 2015) ("Because the Agreement does not refer to the TAA, IAA, or any other body of law offering a competing standard of review, we hold that the FAA's standard of review applies.").

While the Agreement did not define the precise contours of the federal-court approval required, that approval appears to require applying "the default under the TAA, and the only course permitted by the FAA, [which] is restricted judicial review," *id.* (quoting *Nafta Traders*, 339 S.W.3d at 101), and whether the amount awarded to the minor plaintiff is in his best interests.

The objecting plaintiffs assert that this court should also review for, and set aside the award because of, the arbitrator's legal error in determining the minor son's allocation relative to the adult daughters' share. The Texas Civil Practice & Remedies Code allows a court to vacate an arbitral award if the arbitrator exceeded his power. *See* Tex. Civ. Prac. & Rem. Code § 171.088(a)(3)(A). But making "a mistake of law . . . does not constitute the arbitrator exceeding his powers under section 171.088(a)(3)(A)." *Humitech*, 424 S.W.3d at 794; *see also Campbell Harrison & Dagley, LLP v. Hill*, 782 F.3d 240, 244 (5th Cir. 2015) ("Under Texas law, review of an arbitration award is so limited that an award may not be vacated even if there is a mistake of fact or law."). The record does not show that the arbitrator made either a mistake of law or fact, or exceeded his powers. Section 171.088(a)(3)(A) does not provide a basis to reject the award.

"Under the TAA, the courts have [also] traditionally permitted certain common-law, non-statutory grounds for vacating an arbitration award, including manifest disregard of the law, gross mistake, and an award that violates public policy." *Humitech*, 424 S.W.3d at 794. None of these grounds gives this court authority to review the arbitrator's award for legal error. "Manifest disregard is a very narrow or extremely limited standard of review" that is "more than error or misunderstanding of the law." *Id.* at 795 (quotation marks omitted). "[T]he issue is not whether the arbitrator correctly interpreted the law, but whether the arbitrator, knowing the law and recognizing that the law required a particular result, simply disregarded the law." *Id.* (quotation marks omitted).

"Gross mistake is conceptually analogous to manifest disregard," requiring "a mistake that implies bad faith or a failure to exercise honest judgment and results in a decision that is arbitrary and capricious." *Id.* And "an arbitration award cannot be set aside on public policy grounds except in an extraordinary case in which the award clearly violates carefully articulated, fundamental policy." *Id.* at 796 (quotation marks omitted).

In *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11 (Tex. App.–Corpus Christi 2010, no pet.), the court rejected an argument that "the arbitrator exceeded his authority in issuing an award that violates public policy because it requires appellants not to act in the best interest of their mother." *Id.* at 25. Although the court acknowledged that "public policy considerations may underlie the parent-child guardianship, particularly where the parent is under guardianship," it concluded "that the arbitration award . . . did not in any way impugn that relationship" because the agreement contained "specific and detailed provisions regarding the care, custody, and control of [the mother] and attempts to ensure that all of her children have access to her." *Id.* The challenged allocation in this case does not impugn the parent-child relationship between the decedent and his then-minor son and does not otherwise reveal the arbitrator's manifest disregard of the law or facts, gross mistake, or violation of public policy. The TAA does not provide a ground for vacating the arbitration award.

### B. Review of the Arbitration Award Under the FAA

The FAA authorizes a federal district court to vacate an arbitration award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). A district court's review under § 10(a)(4) is limited to "the sole question [of] whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 133

7

S. Ct. 2064, 2068 (2013). "It is not enough to show that the arbitrator committed an error—or even a serious error." *Id.* (alterations omitted) (quotation marks omitted). "Accordingly, the party challenging an arbitrator's award under § 10(a)(4) must carry a heavy burden." *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 788 (5th Cir. 2015) (quotation marks omitted). "In determining whether the arbitrator exceeded her authority, district courts should consult the arbitrator's award itself . . . including but not limited to: (1) whether the arbitrator identifies her task as interpreting the contract; (2) whether she cites and analyzes the text of the contract; and (3) whether her conclusions are framed in terms of the contract's meaning." *Id.*

The arbitrator's award in this case states that it was made pursuant to the parties' Arbitration Settlement Agreement. (Docket Entry No. 136, Ex. 2 at p. 1, 4). The arbitrator stated that his task in carrying out the Agreement was to "apportion the available insurance proceeds recovered to date from the death of [the decedent] among the claimants to those proceeds." *Id.* at 1. The Agreement gives the arbitrator "sole discretion and authority to determine the final allocation of the Funds to the Parties." (Docket Entry No. 136 at p. 1). The Agreement says the arbitrator's decision "is final" and "not appealable," and requires the arbitrator to "provide a reasoned explanation of the basis of his opinion and/or award," which the arbitrator did. *Id.* at 2. The arbitrator interpreted the parties' contract and did not exceed his authority. Section 10 of the FAA provides no basis to vacate the arbitration award.

Unlike Texas state courts interpreting the TAA, the Fifth Circuit has held that the FAA does not recognize "manifest disregard of the law" as an independent, nonstatutory ground for vacatur. *Citigroup Global Markets, Inc. v. Bacon*, 562 F.3d 349, 358 (5th Cir. 2009) ("[A]rbitration awards under the FAA may be vacated only for reasons provided in § 10." (citing *Hall Street. Assocs. LLC*

8

*v. Mattel, Inc.*, 552 U.S. 576 (2008)).  This court finds and concludes that, based on the testimony and arguments at the hearing, the settlement amounts allocated in the arbitration award were in the minor plaintiff's best interest and that the arbitrator did not manifestly disregard the law in determining the allocation.  No grounds are present to vacate or modify the award under the FAA.

### III.     Conclusion

The request by three of the plaintiffs for the court to review the award and declare that it must be vacated or modified is denied.  Although the these three plaintiffs asked the court to confirm the award (*see* September 8, 2015 letter, Docket Entry No. 135), the award is still subject to the probate court's review and is not ripe for confirmation under the parties' Arbitration Settlement Agreement.    The motion for review is denied.

SIGNED on September 14, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge